Roseland McGRATH, Plaintiff

v.

EVEREST NATIONAL INSURANCE
COMPANY, Defendant.

Case No. 2:07 cv 34.

United States District Court,
N.D. Indiana,
Hammond Division.

Sept. 23, 2009.

Opinion Denying Reconsideration,
Certification and Stay Jan.
15, 2010.

Donald W. Wruck, III, Jason J. Paupore, Wruck Paupore LLC, Dyer, IN, for Plaintiff.

Edward W. Hearn, Johnson & Bell Ltd., Merrillville, IN, William K. McVisk, Johnson & Bell Ltd., Chicago, IL, for Defendant.

## *OPINION AND ORDER*

ANDREW P. RODOVICH, United States Magistrate Judge.

This matter is before the court on the Motion for Partial Judgment on the Pleadings, or Alternatively, Partial Summary

Judgment [DE 145] filed by the plaintiff, Roseland McGrath, on September 15, 2008; Everest National Insurance Company's Motion to Strike Portions of Plaintiff's Statement of Material Facts [DE 162] filed on October 20, 2008; and the Motion to Strike Everest's "Reply" Brief or, Alternatively, to File Response [DE 179] filed by McGrath on November 24, 2008. For the following reasons, the Motion to Strike Portions of Plaintiff's Statement of Material Facts [DE 162] is **DENIED,** the Motion to Strike Everest's "Reply" Brief [DE 179] is **GRANTED,** and the Motion for Partial Judgment on the Pleadings, or alternatively, Partial Summary Judgment [DE 145] is addressed as a Motion for Partial Summary Judgment and is **GRANTED IN PART** and **DENIED IN PART.**

### Background

On February 11, 2005, the plaintiff, Roseland McGrath, fell as she was using the front door of Eli's Pub in Hammond, Indiana. At the time of McGrath's fall, Eli's Pub was a named insured on a Commercial General Liability Policy of Insurance maintained with Everest National Insurance Company. McGrath's counsel advised Randy Godshalk, the principal member of the company operating Eli's Pub, Aidan Alan, LLC d/b/a Eli's Pub, of her claim against the pub. Godshalk, in turn, reported her claim to Everest and its third party administrator, Risk Control Associates ("RCA"). Godshalk also is an attorney licensed to practice law in Indiana.

On September 5, 2006, McGrath, filed a complaint against "Eli's Pub" in the Lake County Superior Court. Service of this state court complaint was made on Godshalk. Godshalk also was the managing or principal member of Randall Neely, LLC, which owned the building and leased that property to Eli's Pub. The complaint was sent by certified mail to Eli's Pub, and plaintiff's counsel also sent a copy of the complaint to Peter Buthmann, a representative from RCA who had investigated the claim for the insurer.

On September 8, 2006, an Everest manager contacted Stephen Kolodziej, an attorney at the law firm of Brenner, Ford, Monroe & Scott ("Brenner Ford"), and Kolodziej advised Everest that Brenner Ford employed a licensed Indiana attorney who could appear for and defend the interests of Everest's insureds in the state court action. On this basis, Everest retained Brenner Ford.

On September 18, 2006, in a letter from RCA to "Aidan Allen LLC t/a Eli's Bar, Randall Neely, LLC" (hereafter, "the insureds"), RCA indicated that it was "in receipt of a summons and complaint" in the state court action and had retained the firm to defend the insureds in the matter. This letter contained explicit instructions to the insureds to cooperate fully in the defense and investigation of the claim, instructions repeated in another letter the next day.

No appearance was entered by any attorney from Brenner Ford in the state court matter, and on October 4, 2006, an order of default was entered against Eli's Pub. A hearing on McGrath's damages was set for November 29, 2006. In the interim, Kolodziej corresponded with McGrath's counsel, Donald Wruck, on several occasions. In a letter dated October 13, 2006, Kolodziej informed Wruck that Eli's Pub, the defendant named in the complaint, was "merely a name, and not a legal entity amenable to suit." (Pltf. Mot. Ex. 11) Kolodziej suggested the misnomer, but he kept the insureds' identity undisclosed and ignored return communications asking for accurate information to amend the complaint. This notion of an error in identity was repeated in a November 16, 2006 letter from Kolodziej to Godshalk, wherein Kolodziej explained that his re-

search confirmed that because the named defendant was not an existing legal entity, the lawsuit was a nullity under Indiana law. (Pltf. Mot. Ex. 10) Kolodziej described his strategy to Godshalk:

> We are therefore taking no action with respect to that lawsuit, and will not file an appearance or any other pleading with the court until and unless plaintiff amends her complaint to name a real person or corporation amenable to suit, [sic] and properly serves that defendant with summons. Hope-fully, plaintiff will fail to do this prior to the expiration of the statute of limitations in February, 2007.

(Pltf. Mot. Ex. 10)

Wruck, alerted by Kolodziej's evasive correspondence and failure to provide subsequent answers, searched state records in an effort to identify the proper legal entity to be sued. The records of the Indiana Alcohol and Tobacco Commission revealed the defendant's full name designation as "Aidan Alan, LLC d/b/a Eli's Pub." With this information in hand, Wruck obtained an order from the state court correcting the misnomer of the defendant. The same day that the order correcting the defendant's name was entered, Kolodziej sent Wruck another letter, this time advising of his firm's representation of Aidan Allen, LLC [1] and its intention to enter an appearance and file a motion to vacate the order of default entered against Eli's Pub.

On November 27, 2006, Brenner Ford attempted to enter the appearance of Kolodziej and K. Amy Lemon on behalf of the insureds and filed an emergency motion to vacate the default order. At that time, however, Lemon was suspended from the practice of law in Indiana for nonpayment of dues. Kolodziej had petitioned the court to appear *pro hac vice*, relying on Lemon as local co-counsel. Both applications for appearance were denied—Lemon's due to her suspension and Kolodziej's as defective. Lemon was able to reinstate her Indiana license on the morning of the hearing, and she alone appeared before Judge Robert Pete for the damages hearing. Lemon presented Kolodziej's *pro hac vice* motion once again, which Judge Pete again denied as defective.[2] The court also heard argument on the motion to vacate the entry of default, denied the motion twice on the record, then proceeded to conduct the scheduled hearing on McGrath's damages.

Lemon, sole counsel appearing for the insureds, was unprepared to participate in the damages hearing. Although Kolodziej's application to appear listed good cause for admittance "due to the attorney-client relationship that has remained for an extended period of time[,]" Lemon stammered a stream of reasons why the hearing on damages should not proceed, including the fact that "[her] office has not even had a chance to meet with the client yet." (Pltf. Ex. 15, Transcript of Hearing on Damages, Nov. 29, 2006, p. 8) McGrath called witnesses concerning damages, but Lemon failed to conduct any cross-examination, each time professing her lack of preparation. At the close of this hearing, the court foreclosed any further discussion on the entry of judgment on liability, but

---

**1.** The various spellings of "Aidan" are intentional: the court is providing accurate representations of the record. The spelling on the policy is "Aidan." (Pltf. Ex. 1) Eli's Pub is also referred to as "Eli's Bar" in the policy and in correspondence from RCA.

**2.** McGrath includes as an exhibit the Indiana Rules for Admission to the Bar detailing the requirements for limited admission on petition. Although Kolodziej's application lacked the required elements, such a rehashing of Judge Pete's decision to deny the application is unnecessary: the state court decision on this issue was made on the merits and will not be questioned here.

allowed another setting for the defendants to provide evidence on damages.

After this initial hearing, Kolodziej reported the case's "unbelievable turn of events" in a letter to Buthmann at RCA.[3] Among other things, this letter distorted the nature of the strategy that Kolodziej had chosen to pursue by identifying Godshalk, the representative of the insureds, as an Indiana attorney and using the plural pronoun "we" in describing the choice neither to enter an appearance nor to answer the complaint.

The hearing on damages proceeded on December 11, 2006, but counsel for the insureds failed to present any evidence on the issue of damages. At the close of the hearing, the court permitted damage briefs rather than argument, and McGrath submitted her Brief on Damages requesting an award of economic and non-economic damages in a maximum sum of $15,825,024, plus any punitive damages the court deemed appropriate. Counsel for the insureds never filed a brief on damages nor contested McGrath's calculations.

Just days after the close of the damages hearing, counsel for the insureds filed a Motion to Reconsider in an effort to be relieved of the default, but no hearing ever was held to address it. Unfortunately, in March 2007, Judge Pete unexpectedly died, and the issue of damages was unresolved. The judge temporarily assigned to Judge Pete's court entered an order on April 11, 2007, denying McGrath's Motion for Determination of the Damages On Submission Without Further Hearing, stating that without such a stipulation of the parties, a hearing should be held on the matter.

McGrath initiated this federal cause of action in February 2007, originally asserting claims against Godshalk, Randall Neely, LLC, and Everest. McGrath's federal complaint alleged that Aidan Alan, LLC was insured under a policy with Everest separately from Randall Neely, LLC. She alleged a count in negligence against Godshalk directly, another count in negligence against "Eli's Pub" as a sole proprietorship of Godshalk, and a count in negligence against Randall Neely, LLC. McGrath further sought two counts seeking declaratory judgment: the first, alleging that Godshalk was the alter ego of both LLCs, and the second, seeking declaration that independent acts of negligence committed by the defendants Godshalk and Randall Neely, LLC were separate "occurrences" according to the terms of the Everest policy.

In response to the federal lawsuit, Everest informed Godshalk that "it was [its] position that there may not be coverage for this matter under the Everest policy[,]" even though Randall Neely, LLC appeared on the Named Insured Amendment of the policy and Everest's claims adjuster indicated that "[a] review of our policy indicates that Randall Neely, LLC is an additional insured under our policy." (Pltf. Ex. M) Everest agreed to defend the insureds subject to a reservation of rights that there may not be coverage under the policy.[4] The insureds again were reminded that "[p]olicy conditions require that you cooperate fully." (Pltf. Ex. L) In its answers, Everest denied that Randall Neely, LLC was a named insured on the poli-

---

**3.** Comparison of the content of letters sent by Kolodziej throughout his representation of the insureds is rich with irony and prevarication. Kolodziej's apocryphal surprise at the default entry is overshadowed only by his litany of misleading accusations of unethical conduct by McGrath's counsel and Judge Pete.

**4.** Daniel Leininger of the law firm Miner Lemon & Walston, LLP, was retained to defend the insureds at this time. The named partner, Lemon, is a relative of K. Amy Lemon of Brenner Ford.

cy. With this denial, Everest also denied that the policy's $2,000,000 General Aggregate benefits were applicable to McGrath's claims.[5]

The insureds now were left with a state court entry of default in a lawsuit seeking $15 million in damages and a federal court proceeding where Everest, in full control of the defense, repeatedly denied that the policy provided coverage. Although Wruck informed Everest of the conflicts of interest involved, the insureds were not provided with independent representation. In July 2007, Godshalk personally retained Terrence Rubino of Rubino, Ruman, Crosmer, Smith, Sersic & Polen ("Rubino Ruman"), to represent his interests. In spite of repeated efforts to discuss conflicts of interest, settlement, and mediation from July 2007 to January 2008, Everest rebuffed any collaboration or cooperation with Godshalk's counsel.[6] In fact, on many occasions Everest's counsel simply failed to respond.

Likewise, McGrath attempted to settle both the state and federal claims with Everest together for the aggregate amount of $2,000,000, but efforts to meet for settlement or mediation were spurned by Everest. As a result of failed settlement attempts, McGrath filed a Renewed Motion for Determination of Damages in the state court, and the court scheduled the motion for final entry of damages on February 13, 2008. Repeatedly, McGrath communicated the possibility of settlement within the indemnity limits and further arranged a mediation on January 16, 2008. Everest was invited to attend the mediation, but counsel for Everest refused. Leininger attended on behalf of Everest's insureds, as did Rubino Ruman.

Before reaching a compromise with McGrath on any issue, Rubino Ruman attempted to confer with Everest and faxed a letter the next day inquiring as to previous settlement demands and Everest's intentions to provide protection for the insureds in the event of an excess judgment in state court. Everest responded the following day by denying McGrath's previous demands within the policy limits and relying on the belief that the applicable limit of $1,000,000 per occurrence capped the policy limit at $1,000,000 rather than $2,000,000. Everest also expressed the belief that the state court default would be set aside and was reluctant to address the contingency of an excess judgment. (Pltf. Ex. 25)

On January 25, 2008, with less than a month before the scheduled hearing on damages in state court, the insureds and McGrath entered into an Assignment and

---

**5.** This court's Opinion and Order of June 19, 2008, 625 F.Supp.2d 660 (N.D.Ind.2008), held that the $2,000,000 General Aggregate indemnity benefits were applicable to McGrath's claims.

**6.** The tone of Everest's letters in response to the repeated efforts to work together for a solution is disinterested at best, rude at worst. With upwards of $15 million claimed in state court, Everest's communications showed no attempts at cooperation:

Please be advised that there is nothing wrong with our fax system system .... I do appreciate you sending your latest correspondence in three (3) manners.

(Pltf. Ex. W, letter dated January 10, 2008)

I am in receipt of your fax of January 17, 2008 [referring to a lack of response to a January 3, 2008 correspondence], and thank you for the same.... Please be advised that I did receive a fax from your office on January 3, 2008, which simply forwarded a communication ... from July of last year [to which Everest never responded]. That communication did not ask me to do anything. Accordingly, I apologize if you intended for me to provide you with a response. I did not understand the communication to be requesting anything from me.

(Pltf. Ex. 25, letter dated January 18, 2008 from Everest counsel to Rubino Ruman)

Non–Execution Agreement ("Assignment"). McGrath promised to reduce the amount of her damages request by over $3,000,000, from $15,825,024 to $12,383,643, to withdraw her request for punitive damages, and to dismiss her federal claims against the insureds with prejudice. In exchange, the insureds agreed to withdraw the motions to reconsider and vacate before the state court and to assign to McGrath all causes of action held against Everest and its agents, whether arising in contract or tort, including all claims for compensatory and punitive damages. (Pltf. Ex. Y) The Assignment was submitted to the court, and the state court entered its Order and Final Judgment in accordance with the stipulations of the parties on January 28, 2008.

On June 23, 2008, McGrath filed her Second Amended Complaint here, which asserts claims for declaratory judgment that the state court judgment is binding on Everest, breach of contract, bad faith and breach of fiduciary duty, negligence, and fraud, all of which arose from Everest's failure to defend its insureds in the underlying state court claims for McGrath's personal injuries. McGrath requests either partial judgment on the pleadings or partial summary judgment with respect to the actions for breach of contract (Count II) and Negligence (Count IV). Specifically, she seeks judgment that Everest breached its contractual and tort duties to defend its insureds in the state action and is liable to McGrath as assignee on the state court final judgment plus interest as consequential damages.

## Discussion

Although McGrath filed a Motion for Judgment on the Pleadings, or Alternatively, Partial Summary Judgment, substantial evidence was entered in support of the arguments. "If, on a motion under ... Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Federal Rule of Civil Procedure 12(d). Thus, the court will consider McGrath's motion in the alternative as a Motion for Partial Summary Judgment.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Williams v. Excel Foundry & Machine, Inc.,* 489 F.3d 309, 310 (7th Cir.2007); *Treadwell v. Office of the Illinois Secretary of State,* 455 F.3d 778, 781 (7th Cir.2006); *Branham v. Snow,* 392 F.3d 896, 901 (7th Cir.2004). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir.2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department,* 424 F.3d 614, 616 (7th Cir.2005); *Hottenroth v. Village of Slinger,* 388 F.3d 1015, 1027 (7th Cir.2004); *Palmer v. Marion County,* 327 F.3d 588, 592 (7th Cir.2003). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Spiegla v. Hull,* 371 F.3d 928, 935 (7th Cir.2004); *Hines v. British Steel Corporation,* 907 F.2d 726, 728 (7th Cir.1990). Finally, summary judgment "will not be defeated simply because motive or intent are

involved." *Roger v. Yellow Freight Systems, Inc.,* 21 F.3d 146, 148 (7th Cir.1994). *See also Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir.1999); *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 346 (7 th Cir.1997); *United Association of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1268 (7th Cir.1990) (stating same).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511

*See also Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Branham,* 392 F.3d at 901; *Lawrence,* 391 F.3d at 841; *Hottenroth,* 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); *Schuster v.* *Lucent Technologies, Inc.,* 327 F.3d 569, 573 (7th Cir.2003).

Initially, the court addresses Everest's Motion to Strike Portions of Plaintiff's Statement of Material Facts. Local Rule 56.1 requires a " 'Statement of Material Facts,' supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence, as to which the moving party contends there is no genuine issue." Further, the court will assume that these facts are accurate, "except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition, as supported by depositions, discovery responses, affidavits and other admissible evidence on file." Thus, it is a function of the court "to review carefully both statements of material facts and statements of genuine issues ... to eliminate from consideration any argument, conclusions, and assertions unsupported by the documented evidence of record offered in support of the statement." *Mayes v. City of Hammond, IN,* 442 F.Supp.2d 587, 596 (N.D.Ind.2006).

Everest generally contends that the majority of the last 50 paragraphs of McGrath's Statement of Material Facts are conclusory and unsupported by the evidence. First, Everest contests the statement that it has denied that Randall Neely, LLC was a named insured on the policy. Everest engages in semantics regarding its differentiation of its denial of Randall Neely, LLC as a *separately named insured* from a denial of a *named insured.* Of course, Randall Neely, LLC was a named insured: "To be clear, Everest never denied that Randall Neeley [sic], LLC was a named insured under the subject policy. Rather, Everest denies that Randall Neeley [sic], LLC is a 'separately named insured' as that term has no meaning to anyone other than Plaintiff." (Deft. Mem. in Supp. of Mot. to Strike, p. 3)

The court disagrees, mainly because the word "separately" has a simple common meaning directly applicable here. In response to ¶ 155 of McGrath's Second Amended Complaint which states, "Defendant Randall Neely, LLC was and is a separate named insured under [the] Policy of Insurance[,]" Everest stated, "Defendant, Everest National Insurance Company, Denies that Randall Neely, LLC is a 'separately named insured' under the policy." The court takes Everest's denial at face value and finds that McGrath's statement of facts on this issue is supported by the denial from Everest's pleading. *See* Federal Rule of Civil Procedure 8(b)(4) ("A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest.").

Next, Everest contends that McGrath mischaracterized this court's holding that the position taken by Everest, denying that the $2,000,000 General Aggregate benefits were available to McGrath's claims, was unsupported. The court's holding of June 19, 2008, clearly stated that "[u]nder the causative definition of 'occurrence,' it still may be possible that one insured entity engaged in multiple separate acts that caused an injury." (Opinion and Order, 625 F.Supp.2d at 669) Everest misconstrues the court's order by implying that the default entered on liability forced the court to accept a conclusion on aggregate limits that was precluded under Indiana law. What the court order actually discussed was McGrath's theory on how the two separate insured entities each played a role in causing her injury—a theory that was irrelevant because of the default entry against both entities. The order clearly stated that $2,000,000 was the maximum payable under the policy, a possibility that Everest denied, but for which the law provides. Nothing stated by McGrath is unsupported by the evidence or by this court's previous order.

Everest moves to strike paragraphs 15, 64–69, 70–82, and 83–114 because they are irrelevant to the counts that the motion for summary judgment addresses. Because the Federal Rules of Evidence must be considered at the summary judgment stage, some evidence may be excluded as irrelevant. *See Keri v. Board of Trustees of Purdue University,* 458 F.3d 620, 630 (7th Cir.2006). Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

█ Paragraph 15 states that Everest denied the available policy limit at the time of the state law claim by falsely maintaining the maximum amount available under the policy as $1,000,000 rather than the actual $2,000,000 aggregate police limits. Everest's stance during settlement efforts and its defense of the claim against Eli's Pub was a part of the defense provided to the insureds, so a misstatement of the policy limits is relevant to the assigned claims. McGrath is correct that this mistaken or false statement is highly relevant to the strict reservation of rights and demand of cooperation forced upon the insureds.

█ The other contested sections of the statement of facts are titled "McGrath's Federal Cause of Action, Everest's Reservation of Rights, and Denial of Indemnity Obligations," (¶¶ 64–69), "Failure to Relinquish Control of Randall Neely, LLC's Defense and Provide Independent Counsel Free of Conflicts," (¶¶ 70–82), "Post–Default Judgment Settlement Efforts and the State Trial Court's Award of Damages," (¶¶ 83–110), and "Plaintiff's Present Action as Assignee of Everest's Insured." (¶¶ 111–14) All four of these sections chronologically detail events occurring after the entry of default in state court. Al-

though these facts are relevant to the other surviving claims in this cause of action, they are not integral to the court's decision on the counts being addressed in the partial summary judgment here. But facts need not be integral to be relevant. Here, Everest's repeated denials of coverage, denials of the indemnity limits, demands to cooperate with the defense, and refusals to cooperate in settlement negotiations and mediation are all relevant in painting a portrait of Everest's handling of the claim and the insureds' defense. Therefore, these facts are all relevant to the decision here, and the Motion to Strike is DENIED.

■ In response to the Motion to Strike, McGrath expresses frustration with Everest's arguments and briefs. McGrath contends that not only has Everest repeatedly presented arguments on points thoroughly discussed and decided by this court in the past, but it has put forth erroneous and unsupported arguments that bog down the progress of the case. For example, Everest's Motion to Strike contains a section arguing against two paragraphs of McGrath's fact statement that purportedly are unsupported or irrelevant, though only "Ed" knows why:

> Similarly, paragraph 92 is unsupported by the record. There, Plaintiff incorrectly claims (ED I NEED YOUR HELP ON THIS ONE)
> Paragraph 100 (ED PLEASE ADDRESS THIS) Furthermore, Paragraph 100 should be stricken as it raises irrelevant issues subsequent to the alleged breach of the duty to defend....
> (Deft. Mem. in Support of Mtn. to Strike, p. 5)

The irony of such work product presented to this court in defense of claims of breaches of a duty to defend is apparent, and McGrath requests that the court sanction Everest for putting forth unsupported arguments and bad faith delay.

"A court may impose Rule 11 sanctions for arguments that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Independent Lift Truck Builders Union v. NACCO Materials Handling Group*, 202 F.3d 965, 968–69 (7th Cir.2000). A frivolous argument "is one that is baseless or made without a reasonable and competent inquiry." *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir.1998).

Although Everest previously has been sanctioned in this litigation, those sanctions and this court's prior warning involved discovery conflicts. (*See* Opinion and Order, 625 F.Supp.2d at 673) The court warned Everest that unnecessarily revisiting the limits of relevancy in this matter would result in further sanctions. Despite the fact that Everest's Motion to Strike predominantly attacked the relevancy of large portions of the Statement of Facts, the argument that those facts which occurred subsequent to the alleged moment of breach are irrelevant is not baseless or unreasonable. If the court in its discretion had accepted that argument, the overall outcome here, establishing breach at the point where Everest failed to answer for its insureds in state court, would remain the same, but this does not dictate a dilatory motive at play. Because the arguments in Everest's motion to strike were not frivolous and because shoddy work is embarrassing, though not necessarily sanctionable, the court will not impose sanctions at this time.

■ A second side issue to be addressed is McGrath's Motion to Strike Everest's "Reply" Brief or, Alternatively, to File Response. It addresses the filing of Everest National Insurance Company's Reply Brief in Support of its Request for Partial Summary Judgment [DE 176] filed on November 17, 2008, following McGrath's Motion for Partial Summary Judgment [DE 146],

Everest's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment *and Request for Partial Judgment as a Matter of Law in Favor of Everest* [DE 164] (emphasis added), and McGrath's Reply [DE 169].

The Local Rules pertaining to motion practice provide:

> [A]n adverse party shall have fifteen (15) days after service of a motion in which to serve and file a response, and the moving party shall have seven (7) days after service of a response in which to serve and file a reply. . . .
>
> Each motion shall be separate; alternative motions filed together shall each be named in the caption on the face.
>
> Local Rule 7.1(a)-(b)

Clearly, motion practice calls for a motion, a response, and a reply. *See Goltz v. University of Notre Dame du Lac,* 177 F.R.D. 638, 639–642 (N.D.Ind.1997) (discussing the application of local rules to summary judgment briefing and the discretion of the court in striking a response to a reply or a sur-reply). "[I]t is within the district court's discretion to strike an unauthorized filing [of a response to a reply brief]." *Cleveland v. Porca Co.,* 38 F.3d 289, 297 (7th Cir.1994).

Everest appears to believe that by adorning the title of its response brief with the "Request for Partial Judgment as a Matter of Law in Favor of Everest," it in essence has filed its own dispositive motion. It has not. If Everest had wanted to file its own dispositive motion, Local Rule 7.1(b) requires that the motion be filed separately.[7] Furthermore, the "request" amounts to nothing more than a

plea to deny the pending motion for partial summary judgment, a simple mirror to McGrath's motion.[8] Thus, Everest's response brief it just that—a response brief—and not a separate motion for summary judgment. Because there is only one set of briefing here on McGrath's motion for partial summary judgment, the extraneous "reply" brief filed by Everest is outside of the briefing provisions of this court's local rules and will be disregarded. The Motion to Strike submitted by McGrath is **GRANTED.**

Turning to the issues of the partial summary judgment, McGrath alleges that Everest breached its contractual duty to defend the insureds as required by the Policy and that it is bound by the final judgment entered in state court, plus all accrued interest, as consequential damages. McGrath also avers that Everest breached its duty to conduct the insureds' defense with proper diligence and that the breach is negligence per se. A federal court sitting in diversity applies federal procedural law and the substantive law of the state in which it sits. *Charter Oak Fire Insurance Company v. Hedeen & Companies,* 280 F.3d 730, 735 (7th Cir.2002). Here, the court must apply Indiana substantive law to the contract and tort disputes.

### I. Breach of Contract

 "Insurance contracts are governed by the same rules of construction as other contracts, and the proper interpretation of an insurance policy, even if it is ambiguous, is generally a question of law appropriate for summary judgment." *Newnam Mfg., Inc. v. Transcontinental*

---

7. Alas, Everest has a history of difficulty with the definition of the word "separately." Here, as in the analysis *supra,* the court relies on the common meaning of the word.

8. This strategy of mirroring the legal issues raised defensively into an offensive attack is a

rerun of Everest's strategy of asserting counterclaims against McGrath, which this court dismissed for their redundancy. (*See* Opinion and Order, DE 201 (granting McGrath's Motion to Dismiss Counterclaims)).

*Ins. Co.,* 871 N.E.2d 396, 401 (Ind.App. 2007). *See also Mahan v. American Std. Ins. Co.,* 862 N.E.2d 669, 676 (Ind.App. 2007) ("The interpretation of an insurance policy is primarily a question of law, and therefore, is a question particularly suited for summary judgment."). The policy language should be given its plain and ordinary meaning if that language is clear and unambiguous. *Eli Lilly Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985). Indiana law provides that an insurance policy is ambiguous if reasonable persons may honestly differ as to the meaning of the policy language. *Newnam Mfg.,* 871 N.E.2d at 401. Where terms are ambiguous, it is "the responsibility of the trier-of-fact to ascertain the facts necessary to construe the contract." *Perryman v. Motorist Mut. Ins. Co.,* 846 N.E.2d 683, 687 (Ind.App.2006). If ambiguity exists, insurance policies are construed strictly against the insurer. *Am. States Ins. v. Kiger,* 662 N.E.2d 945, 947 (Ind.1996).

The Insuring Agreement in the Coverages section of the policy states, "We will have the right and duty to defend the insured against any 'suit' seeking those damages." (Ex. 1, p. 6) Everest has admitted that the policy contractually obligated a defense of the insureds and clearly stated in its Answer, "Everest admits that, in response to the suit filed in the Lake Superior Court, Everest asserted its right and *undertook its obligation to defend the interests of its insureds* with respect to said suit and Everest's right to control the defense of that suit as alleged in [ ] Plaintiff's Complaint." (Deft. Answer to Second Amended Complaint, ¶ 29) (emphasis added). Therefore, no ambiguity exists on the question of whether Everest had a contractual duty to defend the insureds.

■ Indiana courts repeatedly have instructed insurers that this duty may be disavowed, with a warning: an insurer may refuse to defend a claim it believes outside the risks covered by the policy, however it does so at its own peril. *Kelly v. Hamilton,* 816 N.E.2d 1188, 1191 (Ind. App.2004); *Foreman v. Jongkind Brothers, Inc.,* 625 N.E.2d 463, 468 (Ind.App. 1993); *Progressive Casualty Insurance v. Morris,* 603 N.E.2d 1380, 1383 (Ind.App. 1992); *Liberty Mutual Insurance Co. v. Metzler,* 586 N.E.2d 897, 901 (Ind.App. 1992). These four cases each deal with an insurance company's decision denying a defense to its insured either while declining to protect its interest by hiring independent counsel under a reservation of rights or by filing a declaratory judgment action prior to the entry of judgment in the underlying suit. All discuss whether the insurer is collaterally estopped from challenging the judgment involving the insured after the fact. The Indiana Supreme Court has added a caveat which summarizes the differentiation between the cases: although an insurer may refuse to defend at its own peril, "the insurer will be bound at least to the matters necessarily determined in the lawsuit." *State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce,* 762 N.E.2d 1227, 1231 (Ind.2002). *Compare Kelly,* 816 N.E.2d at 1193 (finding that the judgment did not address the issue of the insurer's coverage and thus the insurer was not collaterally estopped from that defense at the proceedings supplemental stage of the case) *and Foreman,* 625 N.E.2d at 469 (holding that the trial court's articulation of negligence in the default judgment entry supported the notion that the claim was outside the policy coverage and the issue of coverage had not been addressed) *with Progressive,* 603 N.E.2d at 1383–84 (holding that the insurer was collaterally estopped from asserting that the motorcyclist acted intentionally and thus was excluded from coverage when the underlying verdict determined negligence) *and Liberty Mutual,* 586 N.E.2d at 902 (holding that insurer was

collaterally estopped from litigating at the proceedings supplemental stage whether the driver intentionally caused the injury after a complaint alleging negligence was not answered and a default judgment of liability for negligence was entered).

Although *Progressive* and *Liberty Mutual* are applicable here, Everest's behavior is distinguishable in one key regard: Everest did not refuse to defend its insureds. This court must look at the case law which holds that an insurance company's deliberate decision not to defend an insured collaterally estops it from subsequently attacking a default judgment and compare it to Everest's statement to its insureds that it was defending them in the state court action. Yet, the state complaint never was answered, the attorneys retained were unable to practice in the state of Indiana, and no defense to the amount of damages ever was presented during two hearings on damages. Everest's promise of a defense, retention of Brenner Ford, and subsequent failure to put forth any defense in state court must be perceived as equally perilous for the insureds than an outright denial of a defense from the outset. Instead of being placed on notice that they had to retain their own attorney, the insureds were misled into believing that their interests were being protected. In essence, Indiana law instructs that the entry of default judgment in state court collaterally estops an insurer from relitigating the issue of liability and coverage here.

 Which leads to the predominant issue at hand: who breached first, Everest or the insureds? The essential elements of a breach of contract action are the existence of a contract, the breach thereof, and damages. *Nieto v. Kezy,* 846 N.E.2d 327, 333 (Ind.App.2006). "A party first guilty of a material breach of contract may not maintain an action against the other party or seek to enforce the contract against the other party should that party subsequently breach the contract." *Licocci v. Cardinal Assoc., Inc.,* 492 N.E.2d 48, 52 (Ind.App.1986).

Doubtless, the insurance policy is a contract. McGrath believes that the failure to put forth any defense in the state court constituted a breach of the contractual duty to defend and gave rise to the consequential damages caused by that breach. Everest claims that it was the insureds' failure to cooperate by settling the claims with McGrath that breached any obligation it had to defend. Many details occurred between the two events: the complete failure to present a defense at the damages hearings, the ignored attempts to settle within the policy limits, the conflict of interest at play with the provision of counsel, and the time that passed after the default on liability and before the mediation which led to settlement, all without any notable act in furtherance of a defense of its insured.

The rules of trial procedure "are intended to standardize the practice within the court, facilitate the effective flow of information, and enable the court to rule on the merits of the case." *S.T. v. State,* 764 N.E.2d 632, 635 (Ind.2002). "As a general proposition, all litigants, as well as the court, are bound by the rules." *Rueth Development Co. v. Muenich,* 816 N.E.2d 880, 884 (Ind.App.2004) (*citing* and *quoting S.T.,* 764 N.E.2d at 635). Indiana Trial Rule 55(A) authorizes the entry of a default judgment when a defendant fails to respond to the complaint. A trial court is permitted to conduct a hearing "to establish the truth of any averment by evidence or to make an investigation of any other matter." *Progressive Ins. Co. v. Harger,* 777 N.E.2d 91, 96 (Ind.App.2002) (*quoting* Indiana Trial Rule 55(B)). Although the Trial Rules also provide instances for such a judgment to be set aside, "courts must

balance the need for efficient administration of justice with a preference for deciding cases on their merits and giving a party its day in court." *Flying J., Inc. v. Jeter,* 720 N.E.2d 1247, 1249 (Ind.App. 1999).

Here, Everest assumed its duty to defend the insureds and demanded their cooperation. Yet, Brenner Ford's failure to appear and failure to answer left the insureds without an advocate. Furthermore, the state court provided the insureds with a hearing, but Brenner Ford was unable to arrange for the appearance of an attorney who was prepared to handle the defense. Regardless of any misguided strategy at play, the conduct of Brenner Ford, retained by Everest, constituted a breach of Everest's contractual duty to defend.

Everest charges that the insureds' failure to cooperate in violation of the Policy relieved it of any contractual duty to defend, pointing to the insureds' cooperation and settlement with McGrath as the point of breach. However, the insureds settled with McGrath and assigned its claims against Everest long after Everest had breached its duty to defend. *See Steve Silveus Ins., Inc. v. Goshert,* 873 N.E.2d 165, 176 (Ind.App.2007) (confirming the legal conclusion that the first party to materially breach a contract cannot subsequently enforce that contract). Thus, Everest's arguments concerning the insureds' later breach are without merit.

Everest also believes that it has complied with its duty to defend with the sole act of retaining an attorney. However, Everest has failed to cite a single case from Indiana which supports this argument, and Indiana law creates a contractual and fiduciary duty of an insurer to its insureds. *See Stumpf v. Hagerman Construction Corp.,* 863 N.E.2d 871 (Ind.App. 2007) (discussing the exceptions to general rule of no liability for acts of independent contractor). *See also, e.g., Erie,* 622 N.E.2d at 519 ("[I]t is in society's interest that there be fair play between insurer and insured."). Likewise, Everest cites the rules of *pro hac vice* admission to practice and argues that it did not breach its duty by retaining Brenner Ford although that firm lacked attorneys licensed in Indiana. However, breach did not occur with the hiring of Brenner Ford but rather when the law firm failed to answer McGrath's state court complaint, resulting in the entry of a default.

Everest further argues that a Rule 60(b) motion was pending at the time that the insureds stipulated to the judgment in state court and that this precludes the entry of default from being the point of breach because no final judgment had been entered. The insureds breached, the argument continues, when they caused the entry of the final judgment by stipulation. Everest is correct that the default as to liability did not constitute an appealable final judgment. *See Allstate Ins. Co. v. Fields,* 842 N.E.2d 804, 808 (Ind.2006) (holding that a denial of a motion for relief from an interlocutory order granting default judgment on less than all issues is not ripe for appeal). As previously stated, Judge Pete repeatedly denied the motion to vacate the entry of default filed by Brenner Ford. To determine whether the motion which was withdrawn as part of the settlement had any merit, this court must consider the appellate standard of review.

Under Indiana Trial Rule 60(B)(1), a default judgment entered as a result of mistake, surprise, or excusable neglect may be set aside. *Walker v. Kelley,* 819 N.E.2d 832, 836 (Ind.App.2004); *Professional Laminate & Millwork, Inc. v. B & R Enterprises,* 651 N.E.2d 1153, 1157 (Ind.App.1995). The decision whether to set aside a default is given substantial deference and is reviewed under an abuse

of discretion standard. *Shane v. Home Depot USA, Inc.*, 869 N.E.2d 1232, 1234 (Ind.App.2007). "There are no fixed standards to determine the parameters of mistake, surprise or excusable neglect." *Professional Laminate*, 651 N.E.2d at 1157. Indiana courts have found excusable neglect in situations where the defaulting party has established a breakdown in communication that resulted in the party's failure to appear. *Bunch v. Himm*, 879 N.E.2d 632, 635 (Ind.App.2008). *See also Shane*, 869 N.E.2d at 1236 (finding that store owner's failure to file an answer was due to the insurance company's internal breakdown in communication, not due to "drag[ging] its feet"); *Walker*, 819 N.E.2d at 837 (finding no dilatory motive in a party's mistaken notation of hearing date). *Cf. Professional Laminate*, 651 N.E.2d at 1158 (finding out-of-state counsel's failure to seek permission to practice in Indiana properly was not the result of excusable neglect and affirming lower court's denial of motion to vacate default judgment) ("[T]he burden is on the non-resident attorney to ensure that he has obtained the necessary authorization in accordance with the rules promulgated by our supreme court.").

*Bunch* is instructive. When an ex-husband filed a motion to modify child support, the ex-wife's failure to attend the hearing resulted in the court entering a default order of modification. The ex-wife, who was on active military duty, denied receipt of notice. Her re-routed mail containing the notice of the motion and hearing ended up in South Carolina. Because the ex-wife was aware through email correspondence that her ex-husband may have filed a motion, she contacted her attorney and asked him to look into the matter. Unfortunately, by the time she learned of the motion, the hearing date had passed, and the default was entered. The trial court, as well as the Court of Appeals, found that she had made diligent efforts to receive and respond to her mail and had attempted to remain aware of any court activity during her absence. The court noted that she "did not accept the risk of adverse consequences." *Bunch*, 879 N.E.2d at 635–36.

Here, the behavior of Brenner Ford is in stark contrast to the facts in *Bunch*. Brenner Ford and Everest did not have a breakdown in communication. Everest and the insureds had notice of McGrath's complaint. Brenner Ford was retained for the specific purpose of defending the insureds in the state court, yet the attorneys intentionally dragged their feet. Brenner Ford's failure to answer, which resulted in the default, was not the result of mistake, surprise, or excusable neglect: it was the result of a misguided strategy. Kolodziej sent a letter specifically informing the insureds of this strategy to take no action in respect to the lawsuit and not to file an appearance in the hope that the use of the common name of the pub as the named defendant would hide the true owners. Further, after McGrath uncovered the names of the LLCs and corrected the name of the defendant, Kolodziej and Lemon failed to follow the rules for admission to practice in Indiana, resulting in repeated denials of their motions to vacate the entry of default. Like the deference given the trial court's refusal to vacate the default in *Professional Laminate* based upon the lack of excusable neglect for a non-practicing attorney's failure to gain proper permission, it was highly unlikely that Judge Pete's decision would be considered an abuse of discretion by an Indiana appellate court. The highly discretionary nature of the standard of review and the complete lack of mistake, surprise, and excusable neglect foreclose any argument that the pending motion had merit.

Any reference to the eventual settlement and assignment of claims as a breach

by the insureds also ignores the insureds' duty to mitigate damages. *See Callander v. Sheridan,* 546 N.E.2d 850, 854 (Ind.App. 1989) (discussing this duty in a breach of contract case) ("It is true that a non-breaching party must mitigate damages."). The insureds were in a position requiring them to use reasonable diligence to diminish the potential damages in state court when counsel retained by Everest failed to introduce evidence or file a brief on the issue of damages. *See Pierce v. Drees,* 607 N.E.2d 726, 729 (Ind.App.1993) ("While it is true that the non-breaching party must mitigate damages, the breaching party has the burden of proving the non-breaching party has not used reasonable diligence to do so."). *See also Buhring v. Tavoletti,* 905 N.E.2d 1059, 1064 (Ind.App.2009) (discussing duty to mitigate in tort action) ("[F]ailure to mitigate is an affirmative defense that may reduce the amount of damages a plaintiff is entitled to recover after liability has been found."). The Assignment executed by the insureds markedly reduced the amount of McGrath's damages request by over $3,000,000 and removed punitive damages from consideration in state court. In doing so after the bungled defense and Brenner Ford's futile attempts to vacate the default order, the insureds could not further breach the contract, and instead, reasonably mitigated the amount of damages entered in the state court's final judgment. Therefore, the motion for summary judgment as to the breach of contract claim is **GRANTED.**

## II. Negligence

▇▇▇▇ McGrath also seeks a finding of negligence as a matter of law for the failure of the duty to defend. "A duty of care, the breach of which will support a negligence action, may arise contractually." *Town of Orland v. National Fire & Cas. Co.,* 726 N.E.2d 364, 370 (Ind.App. 2000). The existence of a duty is a pure question of law for the court to determine. *Stumpf,* 863 N.E.2d at 876 (*citing Bldg. Materials v. T & B Structural Sys., Inc.,* 804 N.E.2d 277, 282 (Ind.App.2004)). Well established Indiana common law provides that an employer has no duty to supervise the work of an independent contractor and consequently is not liable for the negligence of the independent contractor. *Stumpf,* 863 N.E.2d at 876. This rule is based on the lack of control the employing party exercises over the independent contractor. However, Indiana recognizes five exceptions to this general rule:

> (1) where the contract requires the performance of intrinsically dangerous work; (2) *where one party is by law or contract charged with performing the specific duty;* (3) where the performance of the contracted act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. (emphasis added)

*Stumpf,* 863 N.E.2d at 876

*See also Illinois Bulk Carrier, Inc. v. Jackson,* 908 N.E.2d 248, 259–60 (Ind.App. 2009) (stating same).

*Stumpf* also involved the existence of a duty based upon a contract. The court looked at the contract as a whole in determining if a party was charged with a duty of care based upon the contract. 863 N.E.2d at 876. "If a contract affirmatively evinces intent to assume a duty of care, actionable negligence may be predicated upon the contractual duty." *Stumpf* stated unequivocally that this contractually-based duty was non-delegable, and "a principal will be liable for the negligence of the contractor because the responsibilities are deemed 'so important to the community' that the principal should not be permitted to transfer these duties to another." *Stumpf,* 863 N.E.2d at 876–77 (*citing Ryo-*

*bi Die Casting v. Montgomery,* 705 N.E.2d 227, 229 (Ind.App.1999)).

Because there is no question as to Everest's contractual duty to defend based upon the policy, it appears that actionable negligence may be predicated upon it here. Summary judgment rarely is appropriate in negligence cases. *Florio v. Tilley,* 875 N.E.2d 253, 255 (Ind.App.2007). The particularly fact sensitive nature of a negligence action is governed by the objective reasonable person and is best applied by a jury. *Schoop's Restaurant v. Hardy,* 863 N.E.2d 451, 454 (Ind.App.2007). To prevail on any negligence action or malpractice action, the plaintiff must prove three elements: "(1) a duty on the part of the defendant in relation to the plaintiff; (2) failure to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Blaker v. Young,* 911 N.E.2d 648, 651 (Ind.App.2009) (*citing* and *quoting Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992)). Because of the uncontested fact that the Policy contractually created a contractual duty to defend, Everest is vicariously liable for the defective performance of Brenner Ford as to the insureds. Thus, the actions of Brenner Ford are imputed to Everest.

Everest suggests that the act of hiring Brenner Ford to defend the insureds fulfilled its duty to defend because the duty is delegable. Everest refers the court to *Cincinnati Insurance Company v. Wills,*[9] 717 N.E.2d 151 (Ind.1999), to support the contention that "an insurance company[ ] is not licensed to practice law and cannot file pleadings or practice law."[10] (Deft. Response p. 1) But this simple notion is not an accurate representation of the case law presented: *Wills* concerns whether use of in-house counsel by an insurance company resulted in the company's unauthorized practice of law. Everest fails to use a pinpoint cite to direct the court to the exact page supporting its stance here, but the idea that an insurance company is not a licensed attorney is not in question. The court agrees with the only other cite to *Wills* stating that an insurance carrier is not permitted to enter an appearance or file pleadings on behalf of its policyholder in a tort action. Yet, *Wills* made no reference to the duty being delegable.

Rather, *Wills* discussed the agency relationship:

> It is of course true that a legal entity [such as the insurance company] can be responsible for the professional actions of its partners, employees and agents under standard doctrines of respondeat superior, and in that sense *is viewed as engaged in the activity.* But that does not mean the entity unlawfully practices law any more than Federal Express unlawfully pilots airplanes. Rather the practice of law, the piloting of airplanes and many other activities are required to be performed by licensed professionals. And, as a general proposition, where the law requires a license, *agency doctrine permits an unlicensed legal entity to employ licensed agents to perform those acts requiring a license.* (emphasis added)

717 N.E.2d at 159–60

Similarly, and even more on point, *United Farm Bureau Mutual Insurance Company v. Groen,* 486 N.E.2d 571 (Ind.App. 1985) unmistakenly recognized the agency relationship between an insurer and the attorney that it hired. *Groen* instructs:

---

**9.** Although Everest's brief repeatedly refers to this case as "Willis," the cite plainly refers to *Cincinnati Insurance Company v. Wills,* as cited by the court here.

**10.** Everest also cites cases on this point of law from Illinois and Massachusetts, neither of which are authoritative here.

The attorney is the agent of the party employing him, and in court stands in his stead. The attorney has by virtue of the retainer or employment alone, the general implied authority to do on behalf of the client all acts in or out of court necessary or incidental to the prosecution or management of the suit or defense or the accomplishment of the purpose for which he was retained. Indiana courts have held that in the absence of fraud by his attorney the client is bound by the action of his attorney even though the attorney is guilty of gross negligence. *The negligence of an attorney is the negligence of his client.* (internal citations omitted)

486 N.E.2d at 573

Everest, under contractual obligation, was responsible for the defense of the insureds. Everest retained Brenner Ford. Everest repeatedly warned the insureds to cooperate with the defense provided or risk losing the support of the insurer. Everest cannot insist upon full control of the defense at the time of the state court case, then refute its control and vicarious liability after the failure to defend.

Everest attempts in its Response to distinguish cases where an insurer abandoned its insured by refusing to defend, but it is difficult to imagine which is worse: an insurer communicating its unwillingness to defend an insured from a claim it believes outside the scope of the policy or commandeering a purported defense which fails to materialize, leaving the insureds in a much worse position because of reliance on that

defense.[11] Such a concept is at odds with the notion of fair play between insurer and insured that the Indiana Supreme Court embraced in *Erie.*

Indiana law may support such a respondeat superior claim by the insureds against Everest for the failure of Brenner Ford to assert any defense in the state court case, but it does not support such a claim being assigned. Although Everest did not make this argument, the court *sua sponte* acknowledges that a negligence claim involving legal malpractice is unassignable under Indiana law. *See Rosby Corp. v. Townsend, Yosha, Cline & Price,* 800 N.E.2d 661, 665 (Ind.App.2003) (discussing the bright-line rule drawn by the Indiana Supreme Court holding that no legal malpractice claims may be assigned, regardless whether they are assigned to an adversary) (*citing Picadilly, Inc. v. Raikos,* 582 N.E.2d 338 (Ind.1991)). The Court in *Picadilly* found:

The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession.

**11.** Everest quotes *Cromer v. Sefton,* 471 N.E.2d 700, 706 (Ind.App.1984), supporting the argument that when an insurer has abandoned its insureds prompting the insureds to enter into a consent judgment, the insurer cannot hide behind the policy language concerning the insured's being "legally obligated to pay." Again, Everest mistakenly uses an example of what a court held to argue that this would be the sole instance which would

require an insurer to be held so accountable. Just as Everest stated that *Erie* foreclosed any other tort claims by insureds against insurers, yet the case never declared such a proposition, the cases here fail to extend as broadly as Everest maintains. In any event, though Everest did not "abandon" its insureds in the same manner as the insurer in *Cromer,* it did, in fact, "abandon" them in a far more egregious way.

The almost certain end result of merchandising such causes of action is the lucrative business of factoring malpractice claims which would encourage unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney-client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

582 N.E.2d at 342.

Some states permit an insurance company providing excess coverage to sue the law firm hired by the primary insurer even though the excess carrier was not in privity with the attorney. Indiana, however, has disallowed such a claim based upon its prohibition of assignment of legal malpractice claims. *See Querrey & Harrow, Ltd. v. Transcontinental Ins. Co.*, 885 N.E.2d 1235 (Ind.2008) (holding that excess insurer that was not represented by client's attorneys in the prior action was not entitled to bring a legal malpractice suit); *Municipal Tax Liens, Inc. v. Alexander*, 893 N.E.2d 733 (Ind.App.2008). This hard-line stance against the assertion of a legal malpractice claim by a party not in privity clearly indicates where Indiana draws the boundary on assignability of such claims. McGrath lacks the necessary privity to assert a legal malpractice claim against Brenner Ford, and therefore also against Everest for vicarious liability for its agents' acts. Any negligence claims which are in essence claims of legal malpractice are **DENIED** as a matter of law. Thus, the surviving negligence claims against

Everest must be based solely on the acts of Everest in its handling of the matter for its insureds.

Although the acts of Brenner Ford cannot be imputed to Everest, Brenner Ford's malpractice was not the sole proximate cause of the state court final judgment. Everest implies that the retention of Brenner Ford marked the end of its involvement in this matter. However, this only acknowledges Everest's actions constituting the breach of contract, up to and including the failure to assert a damages defense, but the undisputed facts before the court include all of the correspondence to and from Everest concerning attempts at settlement. In the time between the two damages hearings in state court and the agreement to assign and stipulate to a final judgment, Everest repeatedly refused to partake in the many settlement opportunities offered by McGrath. Although Leininger wrote to Everest with concerns about conflicts of interest, Everest failed to provide conflict-free counsel to its insureds. Following Godshalk's personal retention of Rubino Ruman, Everest rebuffed all efforts to discuss possible settlement or mediation. Likewise, after filing the federal complaint, McGrath attempted to settle both the state and federal claims with Everest for $2 million, but Everest declined the repeated opportunities. With the prospect of a $15 million judgment in state court, Everest's outright refusal to discuss settlement offers within the policy limits are omissions which a reasonable person could predict would lead to the insureds' reaching an agreement with McGrath before the state court entered final judgment.

However, Everest's involvement outside of its hiring of Brenner Ford is precisely the type of fact sensitive situation which is reserved for a jury. Because the insurer,

Everest, is charged with a failure to provide counsel free of conflict and failure to cooperate in any settlement negotiations, summary judgment as to these aspects of McGrath's negligence claim are **DENIED** and shall remain fact disputes to be resolved by a jury.

Because Indiana's prohibition on assignment of legal malpractice claims precludes McGrath from pursuing a legal negligence claim against Everest, and because the fact sensitive nature of the remaining negligence claims against Everest properly belong to a jury, McGrath's Motion for Summary Judgment on the claim of negligence is **DENIED.**

### III. Damages

 Where an insurer breaches an insurance policy, recoverable damages are not defined by or restricted to the indemnity limits of the policy. *Indiana Insurance Co. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1090 (Ind.App.1992). The law in Indiana is that "the policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach.". *See also Schroeder v. Barth, Inc.*, 969 F.2d 421, 425 (7th Cir.1992) (*citing Plummer Power* as Indiana's law on contractual damages.).

 Accordingly, the measure of damages in an action against an insurer for breach of its duty to defend is defined by those damages "suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed." *Erie*, 622 N.E.2d at 519. "Consequential damages may be awarded on a breach of contract claim when the non-breaching party's loss flows naturally and probably from the breach and was contemplated by the parties when the contract was made," a concept generally conceived of as "reasonably foreseeable economic losses." *Johnson v. Scandia Assocs., Inc.*, 717 N.E.2d 24, 31 (Ind.1999). *See also Hasse Construction Company, Inc. v. Gary Sanitary District Board of Comm.*, 2008 WL 2169000, *7 (N.D.Ind. May 23, 2008) (stating that a party may recover in a contract action those losses suffered as a result of the breach which are reasonably assumed to have been contemplated by the parties at the time they formed the contract). The foreseeability test for measuring damages is an objective one and is appropriate for determination by the court as a matter of law. *Indiana & Michigan Electric Co. v. Terre Haute Indus., Inc.*, 507 N.E.2d 588, 601 (Ind.App.1987). The foreseeability for the insurer in a case such as this is straightforward and uniformly supported by courts nationwide: "if an insurer, either through inaction or affirmative representations, leads an insured to believe that it will provide a defense, but fails to do so, the insurer may be liable for any default judgment that is entered against the insured, even if it is in excess of the policy limits." Windt, *1 Insurance Claims and Disputes* 4th § 4:36. *See Pershing Park Villas Homeowners Ass'n v. United Pacific Insurance Co.*, 219 F.3d 895, 902–03 (9th Cir.2000) (holding that an insurer that breaches its duty to defend resulting in a default judgment is liable to the insured for the full amount of default judgment); *Liberty Mutual Fire Insurance Co. v. Canal Insurance Co.*, 177 F.3d 326, 337 (5th Cir.1999) (explaining the few limited exceptions where an insurer has been held liable for consequential damages in excess of the stated policy limit where those damages resulted directly from the insurer's wrongful conduct) ("[I]f the insurer leads the insured to believe he will provide a defense, but does not, the insurer may be liable for a default judgment entered in excess of the policy limits"); *Fidelity & Casualty Co. of N.Y. v. Gault*, 196 F.2d 329, 330 (5th Cir.1952) (conclud-

ing that an insurer that undertakes the defense or investigation of a claim but breaches its duty is liable for all damages resulting). *See also Yeomans & Associates Agency, Inc. v. Bowen Tree Surgeons, Inc.*, 274 Ga.App. 738, 618 S.E.2d 673, 683 (2005) (party breaching a duty resulting in a default judgment was liable for the full amount of the default judgment, plus interest and costs); *Johnson v. Westhoff Sand Co., Inc.*, 31 Kan.App.2d 259, 62 P.3d 685 (2003) (wrongful failure of insurer to provide defense, resulting in default judgment, obligated insurer for the full amount of the judgment in excess of the indemnity limits); *Tradewinds Escrow, Inc. v. Truck Ins. Exchange*, 97 Cal.App.4th 704, 713, 118 Cal.Rptr.2d 561, 567 (Cal.App.2002) (observing that "default judgments are recoverable without a showing of indemnity. . . . [A] default judgment is considered a consequential damage of the breach of the duty [to defend]."); *Naddeo v. Allstate Insurance Co.*, 139 N.C.App. 311, 533 S.E.2d 501, 506 (2000) (breach of duty to defend obligated the insurer to pay the full amount of the default judgment entered by the court against its insured in the underlying action); *Reshamwalla v. State Farm Fire and Casualty Co.*, 112 F.Supp.2d 1010, 1020 (E.D.Cal.2000) (stating that where an insurer breaches its duty to defend and the insured suffers a default judgment, "the insurer is liable on the judgment, even if it is in excess of policy limits.").

Everest argues that the insureds have suffered no damages because the underlying judgment in excess of $12 million has not been executed. This argument is wholly unsupported by relevant case law. *See Midwestern Indemnity Co. v. Laikin*, 119 F.Supp.2d 831, 842 (S.D.Ind.2000) (holding the insurer obligated to pay the amount of the consent judgment); *Cromer*, 471 N.E.2d at 706 (holding that the insurer cannot rely on "legally obligated to pay" language to relieve it of its obligation to

satisfy a judgment subsequent to parties' covenant not to execute); *American Family Mutual Insurance Co. v. Kivela*, 408 N.E.2d 805, 813 (Ind.App.1980) (holding that a consent judgment between the insured and the injured plaintiff and a further "hold harmless" agreement which provided that the judgment would be satisfied only out of the policy, did not, as a matter of law, insulate the insurer).

Everest asserts that Indiana law does not require an insurer to pay in excess of the policy limits in the absence of bad faith, *citing Erie Insurance Co. v. Hickman*, 622 N.E.2d 515 (Ind.1993). Everest is correct that *Erie* imposes a duty on insurance companies to deal in good faith with its insureds, but *Erie* does not foreclose the two legal theories put forth by McGrath here. An insured "may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses and recoveries." *Erie*, 622 N.E.2d at 520. *See generally Mahan v. American Standard Insurance Company*, 862 N.E.2d 669 (Ind.App.2007) (discussing and differentiating the duty to defend and the duty of good faith and fair dealings implied in all insurance contracts). Nothing in *Erie* holds that a claim of bad faith is the exclusive tort remedy available. Rather, this court reads *Erie* as simply a detailed explanation of a bad faith claim against an insurer. No Indiana court has held that a tortious breach of the duty to defend cannot be claimed by an insured.

◼ Pleading alternative theories of recovery in the same case is permitted, and judgments on different claims may include the same element of damages. *Simon Property Group, L.P. v. Brandt Const., Inc.*, 830 N.E.2d 981, 992 (Ind.App. 2005). The contractual duty and the consequence of its breach and the duty arising from the contractual fiduciary relationship

between Everest and its insureds and any possible negligent breach of that duty both resulted in the damages here: the final judgment entered in state court. *See Erie,* 622 N.E.2d at 519 ("[I]n most instances, tort damages for the breach of the duty to exercise good faith will likely be coterminous with those recoverable in a breach of contract action.").

Therefore, the consequential damages for the breach of contract claim, which the insureds mitigated by entering into the Assignment with McGrath, equal the final judgment entered in the state court claim.

For the aforementioned reasons, the Motion to Strike Portions of Plaintiff's Statement of Material Facts [DE 162] filed on October 20, 2008, is **DENIED;** the Motion to Strike Everest's "Reply" Brief [DE 179] filed on November 24, 2008, is **GRANTED;** and the Plaintiff's Motion for Partial Summary Judgment [DE 145] filed on September 15, 2008, is **GRANTED IN PART** and **DENIED IN PART.**

*OPINION AND ORDER*

This matter is before the court on the Third–Party Defendants' Motion to Reconsider the Court's September 23, 2009 (Doc. 202) Order [DE 213] filed on October 13, 2009, and Defendant Everest National Insurance Company's Motion to Reconsider the Court's September 23, 2009 Order (DE 202) and The Court's June 19, 2008 Order (DE 118) or, Alternatively, for Certification of Appeal and/or Stay Pending State Court Appeal [DE 236] filed on October 23, 2009. For the following reasons, both motions to reconsider are **DENIED,** and the alternative motion for certification of appeal and/or stay pending the state court appeal is **DENIED.**

*Background*

Because these motions both ask for reconsideration of the court's prior orders, the backgrounds from DE 118 and DE 202 are adopted here.

*Discussion*

Although they are frequently filed, the Court of Appeals has described a motion for reconsideration as "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." *Hope v. United States,* 43 F.3d 1140, 1142 n. 2 (7th Cir.1994). *See also Talano v. Northwestern Medical Faculty Foundation, Inc.,* 273 F.3d 757, 760 n. 1 (7th Cir.2001). This type of motion "is a request that the [Court] reexamine its decision in light of additional legal arguments, a change of law, or perhaps an argument or aspect of the case which was overlooked." *Ahmed v. Ashcroft,* 388 F.3d 247, 249 (7th Cir. 2004) (internal quotation omitted). *See also United States v. Ligas,* 549 F.3d 497, 501 (7th Cir.2008) ("A district court may reconsider a prior decision when there has been a significant change in the law or facts since the parties presented the issue to the court, when the court misunderstands a party's arguments, or when the court overreaches by deciding an issue not properly before it.").

In *Frietsch v. Refco, Inc.,* 56 F.3d 825 (7th Cir.1995), the Court of Appeals did not question the availability of a motion to reconsider but stated:

It is not the purpose of allowing motions for reconsideration to enable a party to complete presenting his case after the court has ruled against him. Were such a procedure to be countenanced, some lawsuits really might never end, rather than just seeming endless.

56 F.3d at 828

*See also Oto v. Metropolitan Life Insurance Company,* 224 F.3d 601, 606 (7th Cir.2000) ("A party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier."); *Divane v. Krull Electric Company,* 194 F.3d 845, 850 (7th Cir.1999); *LB Credit Corporation v. Resolution Trust Corpo-*

*ration,* 49 F.3d 1263, 1267 (7th Cir.1995). Ultimately, a motion for reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Global View Ltd. Venture Capital v. Great Central Basin Exploration,* 288 F.Supp.2d 482, 483 (S.D.N.Y.2003) (internal quotation omitted).

Brenner Ford requests this reconsideration based upon the "manifest errors of law and fact" in the prior opinion and order. Although a party may believe that the court has erred, it is not an acceptable legal basis for a court to take a second look at an issue already decided. The arguments raised in the original briefs already have been given careful consideration.

Similarly, Brenner Ford's objection to the court's ruling "before the pleadings were even closed" is irrelevant. Everest filed its Third–Party Complaint on September 8, 2008. [DE 137] On September 25, 2008, appearances were entered for Brenner Ford, and a motion to extend time to answer was filed. [DE 153–156] Brenner Ford responded with a motion to dismiss on October 27, 2008. [DE 166] In the interim between the complaint and the motion to dismiss, McGrath filed her motion for partial summary judgment on September 15, 2008. [DE 145] Federal Rule of Civil Procedure 56(a) dictates when a party may file a motion for summary judgment:

A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. The motion may be filed at any time after:

(1) 20 days have passed from commencement of the action; or

(2) the opposing party serves a motion for summary judgment.

Nothing about the timing of the motion for summary judgment or the court's ruling

on it after it was fully briefed was amiss. Brenner Ford had ample time to address the merits of the motion for partial summary judgment before it was ruled on in September 2009, but chose not to brief issues that were central to all aspects of this case. Considering only the most basic notions of judicial economy, Brenner Ford's lack of input on the merits of the motion precludes its input now, as any arguments it may have considered meritorious should have been raised in a more timely fashion.

■ Brenner Ford mistakenly asserts that the underlying state court default order is void as a matter of law because McGrath never served Godshalk with a notice of intent to file a motion for default. Indiana Trial Rule 55(B) states:

In all cases the party entitled to a judgment by default shall apply to the court therefore .... *If the party against whom judgment by default is sought has appeared in the action,* he (or, if appearing by a representative, his representative) shall be served with written notice of the application for judgment at least three [3] days prior to the hearing on such application.... (emphasis added).

Godshalk was not the attorney of record, and the fact that he is an attorney by profession is inconsequential. Eli's Pub was served with the Complaint and had notice of the lawsuit pending against it, yet did not answer, respond, or enter an appearance. There was no attorney of record, neither Godshalk nor Kolodziej, to serve with written notice of the application for entry of default. The argument is meritless.

■ Furthermore, the select quotes chosen by Brenner Ford in its brief are misleading and inapplicable. The Indiana Supreme Court "warning" quoted by Brenner Ford from *Smith v. Johnston,* 711 N.E.2d 1259, 1263 (Ind.1999), specifically

refers to giving notice of a motion for default to *attorneys of record.* "A default judgment is appropriate only where a party has not appeared in person or by counsel and, if there is a lawyer known to represent the opposing party in the matter, counsel had made reasonable effort to contact that lawyer." *Smith,* 711 N.E.2d at 1264. Kolodziej purposefully did not disclose his client to McGrath in the hopes that the statute of limitations would run before the proper legal entity was named,[1] and Brenner Ford cannot demand notice of the motion for default when it intentionally failed to enter an appearance. *See, e.g., Shane v. Home Depot, Inc.,* 869 N.E.2d 1232, 1236 (Ind.App.2007) (finding that the defendant did not "drag its feet" in responding to the lawsuit); *Delphi Corp. v. Orlik,* 831 N.E.2d 265, 269 (Ind. App.2005) (upholding trial court's refusal to set aside default judgment where plaintiff "had no way of knowing that [the defendant] had retained [an attorney] to represent it in this matter"); *City of Vincennes v. Pethtel,* 773 N.E.2d 829, 832 (Ind.App.2002) (distinguishing *Smith* because it involved a medical malpractice case that had gone to a medical review panel, and, therefore, the plaintiff knew from the panel level the representation of the party); *Thayer v. Gohil,* 740 N.E.2d 1266, 1270 (Ind.App.2001) (distinguishing *Smith* and affirming denial of a motion to set aside a summary judgment order based on counsel's neglect); *Integrated Home Technologies, Inc. v. Draper,* 724 N.E.2d 641, 642 (Ind.App.2000) (reversing trial court's grant of motion to set aside

default judgment and distinguishing *Smith* because the defendant admitted that the plaintiff had no knowledge of its representation by counsel); *Flying J, Inc. v. Jeter,* 720 N.E.2d 1247, 1250 (Ind.App.1999) (finding the failure to file an answer a misunderstanding between the insured and the insurance adjuster rather than the result of "foot dragging"). In stark contrast, Brenner Ford engaged in purposeful foot dragging before entry of default by refusal to appear and answer, and after, by refusal to answer correspondence from McGrath inquiring about which party Brenner Ford was representing, all in the hopes of running the statute of imitations.[2]

■ Proceeding to the next argument, Brenner Ford insists that the correction of the misnamed defendant after the default was entered makes the default void as a matter of law. Indiana Trial Rule 21(A) instructs, "Incorrect names and misnomers may be corrected by amendment under Rule 15 at any time." Indiana Trial Rule 15(C), concerning the relation back of amendments, states:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within one hundred and twenty (120) days of commencement of

1. *Citing Outback Steakhouse v. Markley,* 856 N.E.2d 65, 77 (Ind.2006), Brenner Ford now accuses Wruck with a "gaming view" of litigation. Query: what was Kolodziej's strategy?

2. Brenner Ford's Reply further rebukes the lack of notice and opportunity to be heard, all the while failing to understand that by receiv-

ing notice of the complaint and refusing to enter an appearance for strategic purposes, it cannot complain about lack of notice when the plaintiff moved for entry of default. The court rejects the argument that McGrath should have divined the identity of counsel for the insureds when that counsel purposefully refused to disclose his representation.

the action, the party to be brought in by amendment:

(1) Has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and

(2) Knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against him.

These rules are simple and clear, and nothing was improper about McGrath's counsel investigating, then correcting, the defendant's name less than two months after the suit was commenced.

Considering Brenner Ford's repeated accusations of improper conduct by McGrath, there is a basic notion concerning the nunc pro tunc entry correcting the misnomer that bears noting. Indiana law requires businesses operating under a pseudonym or alias to register that name with the state and county:

(a) Except as otherwise provided in section 2 [IC 23–15–1–2] [which is inapplicable here] of this chapter:

\* \* \*

(6) A limited liability company conducting business in Indiana under a name, designation, or title other than the name of the limited liability company as shown by its articles or organization;

\* \* \*

shall file for record, in the office of the recorder of each county in which a place of business or an office of the . . . limited liability company . . . is situated, a certificate stating the assumed name to be used, and, . . . in the case of a limited liability company, . . . the full name and the address of the . . . limited liability company's . . . Principal office in Indiana.

(b) The recorder shall keep a record of the certificates filed under this section and shall keep an index of the certificates showing, in alphabetical order, the names of the . . . limited liability companies . . . and the assumed names which they intend to use in carrying on their businesses as shown by the certificates.

\* \* \*

(e) A corporation, limited liability company, or limited partnership subject to this chapter shall, in addition to filing the certificate provided for in subsection (a), file with the secretary of state a copy of each certificate.

\* \* \*

■ The purpose of IC 23–15–1–1 is to protect the public against fraud by preventing business entities from concealing their identities. *See Rerick v. Ireland,* 76 Ind.App. 139, 131 N.E. 527, 528 (Ind.App. 1921) (referring to IC 23–15–1–1's precursor) ("The statute clearly contemplates the inhibition of conducting a business under an assumed name, and is manifestly intended to protect the public against imposition and fraud, by preventing responsible partners from concealing their identity.").

Brenner Ford complains about how McGrath's counsel amended the complaint after discovering the correct legal entity responsible for the premises where the injury occurred, yet it appears that the insureds' identities were a mystery because of noncompliance with the law of the state. It is fundamentally unfair and also an unlawful business practice to hide behind a pseudonym so that an injured party will not be able to name the legally responsible entity until after the statute of limitations has passed. Though it is not the place of this court to review the nunc pro tunc naming of the insureds as the proper party, the state court's reasoning for the

name change dating back to the original complaint appears reasonable considering the facts.

Brenner Ford's portrayal of this straightforward correction of a misnomer based on the name on the sign hanging over the pub's door, by citing and quoting *Outback Steakhouse*, 856 N.E.2d at 77, is questionable. *Outback Steakhouse* criticized the "gaming view" of an attorney who committed discovery violations by failing to disclose a witness' status, thus committing "fraud on the court." Labeling McGrath's discovery of the proper name of the defendant as "a gaming view of the litigation process" and "a trap" is misplaced when the facts reveal a plan to hide behind a pseudonym in the hopes that the statute of limitations would run out. McGrath neither set "a trap" nor perpetrated any form of fraud, but rather directly asked Kolodziej to identify his connection to the case. *Cf. McGee v. Reynolds*, 618 N.E.2d 40, 41 (Ind.App.1993) (affirming grant of motion to set aside default based on plaintiff's counsel intentionally ignoring inquiry from defendant's insurer where insurer was unaware of the filing of the lawsuit and the plaintiff intentionally concealed such information from the insurer before moving for default). To the contrary, Brenner Ford's strategy—the oft quoted "misguided strategy" per this court's previous Order—was the cause of the subsequent problems.[3]

▮▮▮▮▮ The court has discussed the merits of the preceding arguments in an effort to clarify the law applicable to the state court matter, but McGrath asserts that it is not for a federal court to address

the state court rulings based on the *Rooker–Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) (evolving the doctrine). Under the *Rooker–Feldman* doctrine, no federal court may hear a collateral attack on a state court judgment, save for the U.S. Supreme Court granting review from the highest appellate court in a state when it has decided an issue of federal law. As McGrath argues, the Seventh Circuit has held:

> [The *Rooker–Feldman* doctrine] "precludes lower federal court jurisdiction over claims seeking review of state court judgments ... no matter how erroneous or unconstitutional the state court judgment may be." *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir.2002) (*citing Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir.2000)). The doctrine applies not only to claims that were actually raised before the state court, but also to claims that are inextricably intertwined with state court determinations. *Feldman*, 460 U.S. at 482 n. 16.
>
> *Kelley v. Med–1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir.2008)

But McGrath ends this quote too soon— both the following sentence and paragraph of the *Kelley* opinion reveal that *Rooker–Feldman* is narrowly applied and its scope does not include the case at hand:

---

**3.** Based on the basic rules of civil practice expounded above, including the public policy underlying the need for business entities to register with the state and county, it is impossible to describe the legal strategy implemented by Brenner Ford in the underlying case in a positive way. Hiding the name of the underlying legally responsible entity was contrary to law. Refusing to answer a complaint resulted in a default. Failing to enter an appearance or disclose representation to the plaintiff after inquiry gave the plaintiff no one to inform of the motion for default. "Misguided" was the kindest word applicable.

A state litigant seeking review of a state court judgment must follow the appellate process through the state court system and then directly to the United States Supreme Court.

The Supreme Court recently revisited the doctrine in *Exxon Mobil Corp. v. Saudi Basic Industries,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). The doctrine previously had been applied expansively. In *Exxon Mobil,* the Court explicitly limited the doctrine. The *Rooker–Feldman* doctrine now is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. The doctrine will not prevent a losing litigant from presenting an independent claim to a district court. (internal quotations and their citations omitted).

*Kelley,* 548 F.3d at 603

The Supreme Court cases since *Feldman* have tended to emphasize the narrowness of the *Rooker–Feldman* rule. *Lance v. Dennis,* 546 U.S. 459, 464, 126 S.Ct. 1198, 163 L.Ed.2d 1059 (2006). *See also Johnson v. De Grandy,* 512 U.S. 997, 1005–06, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994) (*Rooker–Feldman* does not bar actions by a non-party to the earlier state suit).

Although all of Brenner Ford's current arguments were considered and rejected in the state court, Brenner Ford was not a party to the state court case. The *Rooker–Feldman* doctrine does not apply because the state court "loser" did not run to federal court in an attempt to invite district court review and reversal of the state court judgment. The doctrine does not prevent this court from having subject matter jurisdiction.

Nevertheless, preclusion principles do apply regarding this court's treatment of the judgment in the state court. *See, e.g., Exxon Mobil,* 544 U.S. at 293 (analyzing the case under preclusion law following the determination that *Rooker–Feldman* does not apply); *Kelley,* 548 F.3d at 607 ("We affirm ... because the *Rooker–Feldman* doctrine applies and there is no subject matter jurisdiction in this case. Therefore, we need not address the defendants' arguments related to res judicata and collateral estoppel.").

 Collateral estoppel, or issue preclusion, limits the litigation of issues that have been decided between parties in a prior action, and it applies only when the same issue is involved in the second proceeding and the determination of that question is "essential" to the prior judgment. *King v. Burlington Northern & Santa Fe Ry. Co.,* 538 F.3d 814, 818 (7th Cir.2008). The Supreme Court recently reiterated the requirements for issue preclusion, noting that "[i]ssue preclusion ... bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell,* 553 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008).

 Under Indiana law, when a party argues that the claim preclusion component of res judicata applies, four factors must be present, namely: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between parties to the present suit or their privies. *In re L.B.,* 889 N.E.2d 326, 333 (Ind.App.2008). Indiana's application of issue preclusion differs from the basic federal requirements in that it affects not

just parties, but their privies. *See United States v. Clark County, Indiana,* 234 F.Supp.2d 934, 937 (S.D.Ind.2002) (applying Indiana law to preclusion issues).

■ All four of these prerequisites are fulfilled in this matter. Despite Brenner Ford's insistence that suing the defendant as "Eli's Pub" voids the state court judgment or somehow calls into question the jurisdiction of the state court, the first requirement is satisfied as explained above. Secondly, state court rulings on the merits, including a default judgment, are res judicata. *Eichenberger v. Eichenberger,* 743 N.E.2d 370, 374 (Ind.App.2001) ("A default judgment is a judgment on the merits for the purpose of res judicata."). *See also Whitaker v. Ameritech Corp.,* 129 F.3d 952, 957 (7th Cir.1998) ("The fact that Whitaker failed to defend her case does not alter this analysis because a default judgment in Illinois is a judgment on the merits and has the same preclusive effect as a judgment resulting from arduous litigation."). Thirdly, the issue of the default and the change of name were addressed by the state court. These issues were litigated to the extent that they were argued to and denied by two different judges. The determination of these issues was considered repeatedly and unquestionably essential to the entry of final judgment, fully satisfying the third requirement.

■ Finally, the party against whom estoppel is invoked, Brenner Ford, although not a party to the underlying state court case, was in privity with Eli's Pub and its legally responsible LLC in the first action. "The term 'privity' describes the relationship between persons who are parties to an action and those who are not parties to an action but whose interests in the action are such that they may nevertheless be bound by the judgment in that action." *Small v. Centocor, Inc.,* 731 N.E.2d 22, 27–28 (Ind.App.2000). The term includes those who control an action, though not a party to it, and those whose interests are represented by a party to the action. *Id.* at 28. *See also Marsh v. Paternity of Rodgers by Rodgers,* 659 N.E.2d 171, 173 (Ind.App.1995) (stating same). Both Everest, as the insurer, and Brenner Ford, as counsel, were in a position and, indeed, controlled the action for the defendant pub. *See Progressive Cas. Ins. Co. v. Morris,* 603 N.E.2d 1380, 1382–83 (Ind.App.1992) ("Collateral estoppel applies to insurance contracts and an insurer is ordinarily bound by the results of litigation to which its insured is a party, as long as the insurer had notice and an opportunity to control the prior proceedings."). *See also Keybank Nat. Ass'n v. Shipley,* 846 N.E.2d 290, 300 (Ind.App.2006) (discussing and affirming the "citadel of privity" between an attorney and his client and the vigorous representation of the client required by the duty of loyalty). Based on these collateral estoppel principles and the full faith and credit this court accords the Indiana state court's findings, this court will not attempt to alter the decisions made in state court regarding the default and the correction of any misnomer[4].

The first argument presented by Brenner Ford which is actually a disagreement with this court's decision rather than an attack of the state court findings is that the court was mistaken in referring the insureds' entry into the stipulation with McGrath as mitigation of damages. However, in making this argument, Brenner Ford cites no case law concerning mitigation, but rather chooses again to argue the merits of the potential relief in state court under the pending Rule 60(B) motion in an

---

4. Brenner Ford repeatedly has argued that Eli's Pub was not a legal entity. However, it was an ongoing business and enough of a legal entity to be a named insured in the Everest policy.

effort to assert that there were no "damages" to mitigate. This argument is contrary to all law on the issue, and the court cannot locate a breach of contract case where the nonbreaching party's duty to mitigate does not arise until *after* a court has deter-mined the breach. *See Albert Johann & Sons Co. v. Echols*, 143 Ind.App. 122, 238 N.E.2d 685, 689 (Ind.App.1968) ("[W]here one person holds a contract to perform services for another and the other party wrongfully discharges the employee, then, while said employee may have a cause of action for damages resulting from the wrongful discharge, he may not sit idly by, but must make a reasonable effort to secure other work and any income from such work may be offset against the damages sought.").

By failing to enter an appearance and file an answer to the complaint, the court has ruled that Everest's contractual duty to defend was breached. This court noted in the prior opinion that the *unrefuted* amount of damages put into evidence before the state court following the entry of default on liability and the hearings on damages, as well as following several denials of motions for relief from default, was over $3 million dollars higher than the amount that the insureds stipulated to in the agreement. Simply put, the insureds made the amount "less severe or intense." *Black's Law Dictionary* 1093 (9th ed.2009). If Brenner Ford has legal precedent that states otherwise, it has missed the opportunity to present it. As for any suggestion that mitigation was not an appropriate subject for the court to address in its grant of summary judgment on the contract claim, the court points out that Everest's Answer to the Second Amended Complaint, in its legal defenses, states, "Plaintiff [suing under the assigned claims of the insureds] is at fault in causing and in contributing to cause Plaintiff claimed injuries and damages, if any." (Everest Ans., p. 96) Although not couched in terms

of mitigation, the implication is the same, and it was appropriate for the court to address the defense raised by pointing out that the insureds decreased the amount of damages that were pending undisputed before the state court.

Brenner Ford's final argument, one that is echoed by Everest, is that this court erred in finding legal malpractice without expert testimony. Citing *American International Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir.1996) and *Hacker v. Holland*, 570 N.E.2d 951, 953 (Ind.App. 1991), Brenner Ford argues that "with regard to the question of whether the defendant attorney exercised due care in his representation of the client in the underlying matter, Indiana law requires expert opinion testimony to prove this element." (Brenner Ford Brief in Support, p. 17) This contention is a correct, but incomplete, statement of the law. *See Oxley v. Lenn*, 819 N.E.2d 851, 857 (Ind.App.2004) ("[E]xpert testimony is usually required in a legal malpractice action to establish the standard of care by which the defendant attorney's conduct is measured."). "The only exception to the rule is when the question is within the common knowledge of the community as a whole or when an attorney's negligence is so grossly apparent that a layperson would have no difficulty in appraising it." *Storey v. Leonas*, 904 N.E.2d 229, 238 (Ind.App.2009).

■■ No reasonable person would dispute that Brenner Ford's failure to appear as a representative for its client and failure to file an answer to a complaint was malpractice. The actions taken (or *not* taken) in the underlying case, where the insurer and the attorneys had actual notice of the complaint, yet failed to answer under the erroneous belief that the law would support their attempts to hide behind an assumed name, need no expert testimony to deduce that the lawyers failed in the

most basic of duties. *See American International Adjustment Co.*, 86 F.3d at 1466 ("A lawyer does not buy immunity from a malpractice suit by hiring an expert to call his pratfalls 'strategic.' ").

Brenner Ford also misunderstands the federal court's role regarding the underlying state court final judgment and any pending appeal of that judgment, and it fails to comprehend that any discussion by this court of the unlikelihood of the state court judgment being reversed on appeal was strictly academic. The court included in the prior order, and again in this order, discussions on the merits in an effort to point out the futility of Everest's and Brenner Ford's arguments.

Brenner Ford also is mistaken in the contention that this court's ruling on a summary judgment motion was somehow "premature." Brenner Ford was made a party to this case on September 8, 2008, and responded to the Third–Party Complaint with a motion to dismiss on October 27, 2008. Brenner Ford was free to respond to any of the motions pending on the docket. If Brenner Ford truly believed that the summary judgment motion was premature, it could have requested relief under Federal Rule of Civil Procedure 56(f).

Likewise, Brenner Ford has not been "prevented" from conducting discovery. In fact, Brenner Ford's refusal to participate in the discovery process is the subject of its Motion to Quash Subpoena [DE 96] filed on March 4, 2008, the Amended Motion to Quash Subpoena [DE 97] filed March 7, 2008, the Plaintiff's Motion to Compel Production Responsive to March 4, 2008 Subpoena [DE 107] filed on March 25, 2008, as well as the more recent Amended Motion for Protective Order and Request for Rule 16 Scheduling Confer-

ence [DE 251] filed by Brenner Ford on November 5, 2009, and the Emergency Motion to Stay Discovery Pending a Ruling on Brenner Ford's Amended Motion for Protective Order and Request for Rule 16 Scheduling Conference [DE 251] filed on November 9, 2009. The dismay at a lack of an opportunity to conduct discovery rings hollow when the docket reflects no requests for discovery from Brenner Ford—only repeated demands for protection from McGrath's discovery requests.[5] Brenner Ford wants to restart the entire case with a Rule 26 conference at a point when the court is readying this matter for trial. The discovery disputes will be addressed in subsequent orders on those specific motions filed, but Brenner Ford's failure to request discovery for over a year is not grounds for reconsideration of the grant of partial summary judgment. Therefore, the motion to reconsider is **DENIED**.

As a final note to Brenner Ford's motion and its briefing, this court's Order of November 13, 2009, has alerted the parties that it will not tolerate any further accusations among the various counsel that are unsubstantiated and unprofessional name-calling. Despite this warning, Brenner Ford's counsel has made baseless accusations of misconduct against Wruck. In Brenner Ford's Reply filed on November 24, 2009, the argument opens with a sentence that is pure fallacy, while quoting in a footnote an out-of-context excerpt from McGrath's counsel's affidavit: "Since at least April 26, 2005, Defendant [referring to Eli's Pub] has been represented by counsel with respect to this incident." (Brenner Ford Reply, p. 2, fn. 3) (*quoting* a November 20, 2006 affidavit of Don Wruck). At the time of this affidavit,

---

**5.** Brenner Ford's motion for protective order screams at the court in bold all-caps the lack of case management deadlines, yet at no time in the past 14 months has Brenner Ford requested that any discovery deadline be extended.

Wruck had corresponded with Godshalk about the injury at the pub. Godshalk had portrayed himself before the filing of the state lawsuit as counsel for Eli's Pub without revealing that he was the sole member of the LLC which owned the premises and ran the bar. It is notable that, based on this knowledge, Godshalk *was* served with the complaint and had notice of the action. Unbeknownst to Wruck, Godshalk had informed his insurer, Everest, of the suit, who in turn retained Brenner Ford to represent Godshalk's LLCs' interests in the matter. In fact, Godshalk never entered an appearance in state court. Counsel for Brenner Ford *knows* this, yet footnotes this quote as support for the charge that McGrath "secured a void default order, without notice to known counsel for the Defendant[.]" Such an inaccurate and baseless accusation of unprofessional conduct by Wruck is *exactly* what this court specifically warned the parties to cease, yet Brenner Ford defied the court order just 11 days later. Therefore, as to the unprofessional accusations made against McGrath's counsel in its Reply brief, Brenner Ford's counsel is **ORDERED TO SHOW CAUSE** why it should not be sanctioned for disregard of the court's November 13, 2009 Order.

Additionally, McGrath repeatedly has complained about the delays caused by the defendants in this matter, and the court has wrestled with an immense amount of evidence and briefing in an effort to thoroughly discern the facts. This time spent was not in vain, and any further factual misrepresentations will result in sanctions. To be clear: this includes spurious cites to cases stating that they represent something that they do not. To give an example other than those already discussed above, Brenner Ford's repeated reliance on *Rich v. Fidelity Trust Company of Indianapolis*, 137 Ind.App. 619, 207 N.E.2d 850 (Ind.App.1965), as an example of the prohibition against suing a non-

existent entity, is less than candid. The case involves a suit against a reorganization trust which had been terminated and therefore no longer existed. *Id.* at 858. This case in no way parallels the situation where a business entity invites the public to enter under a sign with a name on it, yet hides the identity of the legally responsible corporation that owns it so that it cannot be party to a lawsuit. Surprisingly, Brenner Ford includes as exhibits with its Reply the filings of the required documentation for an assumed business name with both the Secretary of State and Lake County, Indiana, dated March 7, 2007, and March 2, 2007, respectively. These belated submissions only confirm what the court and McGrath have been asserting all along: had these required documents been filed before, McGrath would have identified the underlying LLCs upon initial investigation. It is contrary to public policy for a corporation or other business entity to hide behind an assumed name. There is absolutely no correlation between a lawsuit against a non-existent, dissolved trust and a lawsuit against an existing business entity "doing business as" a local pub under an assumed name. The court will not tolerate any further contrived, exaggerated, or misleading quotes or citations from any of the parties' counsel.

Everest's Motion for Reconsideration lists ten ways that the court has erred in both the order on partial summary judgment and the earlier finding that there were multiple occurrences under the policy. Everest boils its arguments down to six basic *points of contention*, less one for the assertion that expert testimony is required to find legal malpractice, which the court has addressed above. Before addressing these arguments, the court reminds Everest that despite the fact counsel for the insurer has changed mid-litigation, no new arguments may be presented now which were not presented in the

original briefs on summary judgment. The presentation of legal arguments in a motion to reconsider which either were or could have been raised in prior briefing are waived and shall be disregarded. *See Frietsch,* 56 F.3d at 828 (discussing standard to be applied on a motion to reconsider). As Everest states in the introduction to its Reply, it "did not submit new evidence for consideration" but "[r]ather [ ] concisely identified the errors of law contained within the Order[s]." Because Everest fully briefed the underlying issues before and fully admits that it simply disagrees with the court's analysis, the court is not required to rehash arguments that already were addressed and decided.

First, Everest asserts that regardless of whether contract theory or tort theory is at issue, Indiana law does not support vicarious liability for Everest. The court disagrees and already has thoroughly explained why that is so. Everest had a contractual duty to defend, and Everest failed to defend the insureds. The argument that the breach was "based solely on the conduct of Brenner Ford" is meritless: Everest had a contractual duty to the insureds and breached that duty. Contractually speaking, it does not matter how the contract was breached by Everest. The Opinion and Order granted summary judgment on the contract claims and denied all claims sounding 'of legal malpractice in a vicarious liability capacity. The court is unsure of what Everest would like reconsidered in this regard: although the court discussed the applicability of vicarious liability, Everest won on the vicarious liability tort issue when the court denied that portion of McGrath's motion, and no claims sounding in vicarious liability for Brenner Ford's negligence survive. Although the court explored every aspect that had been argued in the original briefing, the court held that because Indiana law forbids the assignment of legal malpractice claims, all

such claims were dismissed. There is no further need to discuss vicarious liability in tort for the actions of Brenner Ford and certainly no need to certify any question in this regard to the Indiana Supreme Court.

Second, Everest disagrees with the court's finding that it is now estopped from litigating liability, damages, and coverage. The above discussion concerning collateral estoppel under Indiana law prevents Everest from challenging the issues already decided in state court. Everest was in privity with the insureds in the underlying litigation. All elements of issue preclusion apply, and Everest is bound by the state court judgments on liability and damages. As to an insurer challenging coverage for the amount of the state court judgment, the court stands by the Opinion and Order's analysis of cases discussing the ability of insurers to attack the underlying state court judgments, which fit logically into Indiana's requirements for collateral estoppel. Because Everest assumed its duty to defend and Everest repeatedly warned the insureds that it was in charge of the state court defense of the claims, Everest cannot now claim that it was not a party in control of that defense. No matter how often Everest points out that the analogous case law all involves insurers who *refused to defend their insureds* which Everest insists it did not do, the court sees Everest's breach of the duty to defend as equivalent, if not worse.

Third, Everest revisits this court's Opinion and Order of June 19, 2008, finding that there were multiple "occurrences" for the underlying injury of McGrath. Again, no new arguments have been made, and the court will not rehash the old ones for the newly retained attorneys.

Fourth, Everest denies that consequential damages for breach of contract are available and that the final judgment of the state court claim equates with such

consequential damages. The court found that leaving the insureds undefended in state court and refusing to discuss settlement within the policy limits created the foreseeable consequence of the insureds settling with McGrath. The case law clearly holds that where insurers refuse to defend, they are bound by the final judgment as the consequence of that refusal, which is analogous to the failure to defend by Everest.[6]

Fifth, Everest disputes that the insureds mitigated damages as a matter of law, relying on the pending motion to vacate the default judgment at the time of the stipulation between McGrath and the insureds. As explained above, the breach of contract already had occurred, and the state court already had denied several motions to vacate the default judgment at the time of the stipulation.

▮▮▮▮ Finally, Everest asks the court to certify its Order granting partial summary judgment for appeal, or in the alternative, to stay this case pending the outcome of the appeal in the underlying state court case. Federal Rule of Civil Procedure 54(b) states:

> When an action presents more than one claim for relief—whether as a claim, counter-claim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties

does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

"Although Rule 54(b) certification is to a large extent discretionary with the district court, the 'final judgment' requirement of 28 U.S.C. § 1291 and Rule 54 itself together permit orders to be certified thereunder only if they meet two minimal, nondiscretionary criteria." *Local P–171, Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Co.*, 642 F.2d 1065, 1069 (7th Cir.1981). First, the district court action as a whole must contain multiple claims for relief, and second, the order certified must decide finally and completely at least one of those discrete claims. *Id.* Appellate courts "rely on the sound discretion of district judges to make the determination [as to 'separate' claims] on a case by case basis." *Id.* at 1070. Once a district court has disposed of a separate claim with a final judgment entered on that claim, the district court still must "expressly determine that there is no just reason for delay" and make an "express direction for the entry of judgment" under Rule 54(b). *Id.* at 1071. This discretionary component "serves both to give the district court virtually unreviewable discretion to refuse certification and to limit its power to grant certification by requiring it to weigh the virtues of accelerated judgment against the possible drawbacks of piecemeal review." *Id.* at 1071–72 (internal citations omitted).

Everest is correct in asserting that this matter contains multiple claims for relief and that the grant of summary judgment

---

**6.** Everest repeatedly tells the court of the lack of case law available for a situation such as this as though the court unjustly stretched the available law. The likely reason for the dearth of cases where an insurer has breached the duty to defend in a similar way is that such egregious practice is exceedingly rare. The cases cited to support consequential damages all involve refusals to defend, which is the usual practice, rather than promising to defend, then abandoning the insureds as Everest did here.

on the breach of contract claim decides finally and completely one of those discrete claims. However, after more than two years of shepherding this matter towards finality, this court does not find that the benefits of an accelerated appeal of the contract claim could outweigh the drawbacks of piecemeal review of this matter at this time. Although there remains pending a motion to sever the third-party claims from the original claims between McGrath and Everest, at this time the interrelationship of all the parties appears critical to progress in this matter, whether that progress be settlement or jury trial. In its discretion, the court **DENIES WITHOUT PREJUDICE** the motion for certification under Rule 54(b).

Everest also requests certification for appeal under 28 U.S.C. § 1292(b), which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

"The filing of a proper petition for permission to appeal within ten days is a jurisdictional prerequisite for invocation of 28 U.S.C. § 1292(b)." *Local P–171,* 642 F.2d at 1068 (rejecting untimely request for appeal under § 1292(b) and considering request only under Rule 54(b)). Here, the court's order was entered on September 23, 2009, and Everest's request for appeal under 28 U.S.C. § 1292 was filed on October 23, 2009. Because the motion was not made within ten days, it was untimely and is **DENIED.**

Finally, Everest asks the court to stay this matter pending the underlying state court appeal. The reasoning asserted is inaccurate as a matter of fact and as a matter of law. Factually speaking, the pending appeal simply is *not* an appeal of the underlying state court matter, but an appeal of Everest's failed attempt to belatedly intervene as a third party in the state court matter. It is *not* an appeal of the motion to vacate the default judgment, which, as the court explained in its Opinion and Order of September 23, 2009, is rarely reversed. It is another step removed from any possible reversal of the final judgment of the underlying state court matter. Everest is appealing "[w]hether the trial court erred in denying Proposed Intervenor Everest National Insurance Company's (Everest) Motion for Extension of Time to File Notice of Appeal and whether the trial court erred in denying Everest's Motion to Intervene." (Form # App.R. 15–1. Appellant's Case Summary filed by Everest on August 5, 2009). Characterizing this simply as an appeal of the state court judgment is specious and accords the same warning shot given to Brenner Ford for twisting the facts presented to this court.

██ As a matter of law, Everest is mistaken by presuming federal courts are not bound by doctrines of res judicata regarding any final judgment of a state court until the matter has exhausted all appeals. This is incorrect. A final judgment for res judicata purposes and for

application of abstention doctrines is a valid, final judgment on the merits at the trial court level, not the result following an eventual exhaustion of appeals. *See* Indiana Rules of Appellate Procedure, Rule 2(H) (defining final judgment); *Pond v. McNellis,* 845 N.E.2d 1043, 1054 (Ind. App.2006) (discussing Indiana courts' definition of a final judgment and describing such as an appealable judgment) ("Final judgments dispose the subject matter of the litigation as to the parties so far as the court in which the action is pending has the power to dispose of it."). *See also Starzenski v. City of Elkhart,* 87 F.3d 872, 878 (7th Cir.1996) ("Abstention ... exists to avoid duplicative litigation; in [this] case, the state court had already rendered a final judgment.... Indiana law provides that judgment of the Superior Court is entitled to final and preclusive effect. Because the state court had already rendered a decision, there was no reason for the district court to stay proceedings pending a final outcome."). Because the trial court has rendered a final judgment in the underlying matter, there is no basis for this court to stay the federal action here and the request for a stay is **DENIED.**

---

For the foregoing reasons, the Third–Party Defendants' Motion to Reconsider the Court's September 23, 2009 (Doc. 202) Order [DE 213] filed on October 13, 2009, and Defendant Everest National Insurance Company's Motion to Reconsider the Court's September 23, 2009 Order (DE 202) and The Court's June 19, 2008 Order (DE 118) or, Alternatively, for Certification of Appeal and/or Stay Pending State Court Appeal [DE 236] filed on October 23, 2009, are both **DENIED** in all respects. In addition, counsel for Brenner Ford is **ORDERED TO SHOW CAUSE** why it should not be sanctioned for disregarding the court's November 13, 2009 Order by the criticism of McGrath's counsel in its Reply brief filed on November 24, 2009.